United States District Court
Southern District of Texas

**ENTERED**

April 23, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADRIAN JULIAN BOUTTE, | § | CIVIL ACTION NUMBER |
| Petitioner, | § | 4:22-cv-01921 |
| | § | |
| | § | |
| versus | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| ERIC GUERRERO, | § | |
| Respondent. | § | |

**OPINION AND ORDER ON DISMISSAL**

The petition by Petitioner Adrian Julian Boutte for writ of *habeas corpus* under 28 USC §2254 is dismissed with prejudice. Dkt 1.

1. Background

Petitioner was charged by indictment with one count of theft of at least $20,000 but less than $100,000 in the 506th District Court of Grimes County in Cause Number 17425. Dkt 38-3 at 14–15. He pleaded guilty to the offense and true to two enhancements on June 30, 2015. Id at 74–79. The trial court entered an order of deferred adjudication and sentenced him to five years of deferred-adjudication probation. Ibid. Petitioner didn't appeal the deferred-adjudication order.

In May 2017, the State filed a motion to adjudicate guilt and assess punishment, contending that Petitioner had violated his deferred-adjudication probation by committing a new offense, by not timely reporting his arrest on that new offense to his probation officer, and by failing to pay the fees for his probation. Id at 92–94.

In February 2019, the trial court held an evidentiary hearing on the motion and found that Petitioner had violated condition one of his deferred-adjudication probation. Dkt 38-1 at 71–72. It adjudicated Petitioner

guilty and assessed a sentence of forty years in prison. Dkt 38-3 at 130–35.

The Fourteenth Court of Appeals summarized the evidence from the revocation hearing as follows:

> The State adduced testimony from two Louisiana police officers and one of appellant's supervision officers. The police officers testified that they were investigating the theft of tires and rims from a Buick dealership in Baton Rouge, Louisiana, during one night in January 2017. A six-foot chain-link fence surrounded the dealership, and it had been cut through. About forty vehicles at the dealership were "lifted up on the air on cut wooden blocks with no tires or rims on." About $120,000 worth of tires and rims were taken.
>
> The complainant reported seeing a U-Haul truck backed up to the hole in the fence. When the complainant approached the truck, the U-Haul drove away. A police officer searched interstate license plate readers and found one U-Haul truck that entered Baton Rouge and then traveled away from Baton Rouge at a time that was consistent with the theft. An officer learned that the truck had been rented to a woman in Texas City, and the woman rented the truck for the benefit of a third party. After speaking with the woman, the officers determined appellant's identity and cell phone number. She identified appellant in a photo lineup.
>
> The Louisiana officers, working with the Harris County Sheriff's Office, arrested appellant on February 7, 2017. They confirmed appellant's cell phone number, searched it pursuant to a warrant, and

2

> learned that the phone was in the area of the Buick dealership at or near the time of the theft. The officers also discovered 88 of the 120 missing rims and tires, along with wooden blocks, in a storage facility in Houston "due to discussions that [they] had with [appellant]."
>
> A supervisor for the Probation Department of Grimes County testified that she assisted in the supervision of out-of-county probationers, including appellant. She testified that she maintained records for out-of-county probationers. She acknowledged that appellant reported to a different supervision officer in Harris County. She testified that appellant did not report his February 7 arrest within forty-eight hours of the arrest.

*Boutte v State*, 2020 WL 4873200, *1–2 (Tex App–Houston [14th Dist], pet ref'd).

The Fourteenth Court of Appeals affirmed Petitioner's adjudication and sentence in August 2020. Id at *4. The Texas Court of Criminal Appeals refused his *pro se* petition for discretionary review on December 16, 2020. See *Boutte v State*, PD-0891-20 (Tex Crim App). The CCA dismissed his motion for rehearing as untimely on January 15, 2021. Ibid. Petitioner didn't seek further review in the United States Supreme Court. See Dkt 16 at 3.

Petitioner filed a state application for writ of *habeas corpus* on January 7, 2022. Dkt 38-22 at 45–98. The state *habeas* trial court made no findings of fact or conclusions of law. The CCA denied the petition without written order on March 9, 2022. Dkt 38-27.

Petitioner filed this federal petition for writ of *habeas corpus* in June 2022. Dkt 1. He filed an amended petition in August 2022. Dkt 16. He also filed multiple supplements, memoranda, letters, and notices. Many of his claims appear to overlap. But he clearly asserts that the

revocation of his deferred-adjudication probation, adjudication of guilt, and resulting sentence are void for multiple reasons.

His claims are reorganized here, with indication of the original numbering in parentheses:

1. Trial counsel rendered ineffective assistance by:
    a. failing to confer with Petitioner (Claim 1);
    b. failing to investigate, interview, and call defense witnesses (Claims 2 & 3);
    c. failing to obtain and present exculpatory documentary evidence (Claim 4);
    d. failing to investigate the facts of the Louisiana offense (Claim 6); and
    e. failing to move to suppress Petitioner's statements (Claim 11).
2. The trial court erred in its rulings by:
    a. revoking Petitioner's deferred-adjudication probation based on insufficient evidence (Claim 5);
    b. overruling trial counsel's objection under the Compulsory Process Clause (Claim 7);
    c. accepting Petitioner's plea to the enhancements at the original sentencing hearing (Claims 8 & 9);
    d. overruling objections to testimony not based on personal knowledge (Claim 10); and
    e. adjudicating guilt on a "vague and indefinite" condition of probation (Claim 14).
3. Petitioner's arrest violated the Fourth Amendment (Claim 15).
4. The prosecution improperly suppressed favorable documentary evidence (Claims 12 & 17).
5. The Texas Court of Criminal Appeals erred by:
    a. dismissing Petitioner's motion for rehearing as untimely (Claim 13); and

b. denying Petitioner's state *habeas* application without a written order (Claim 16).

6. Petitioner is actually innocent (Claim 18).

Dkts 1 at 5–41 & 16 at 5–41 & 58 & 59.

Eric Guerrero is now the Executive Director of the Texas Department of Criminal Justice–Correctional Institutions Division and is automatically substituted as Respondent. See FRCP 25(d). He answered the petition and filed copies of the state-court records. Dkts 37 & 38. Petitioner has responded. Dkts 44–46, 48 & 50–58.

Since this petition was filed, Petitioner has been released from TDCJ custody to parole. Dkt 62. He remains subject to supervision for the remainder of his forty-year sentence. He is therefore still "in custody" for purposes of seeking *habeas corpus* relief. See *Maleng v Cook*, 490 US 488, 491 (1989, *per curiam*), citing *Jones v Cunningham*, 371 US 236, 242 (1963).

### 2. Legal standard

Petitioner proceeds here *pro se*. A *pro se* petition is construed liberally and isn't held to the same stringent and rigorous standards as pleadings filed by lawyers. See *Bledsue v Johnson*, 188 F3d 250, 255 (5th Cir 1999).

The Antiterrorism and Effective Death Penalty Act, 28 USC §2241, *et seq*, governs this federal petition for *habeas corpus* relief. See *Woodford v Garceau*, 538 US 202, 207 (2003). This has consequences for the standard of review as to disputed questions of both law and fact.

*As to disputed questions of law*, AEDPA bars federal *habeas corpus* relief based on claims that were adjudicated on the merits by state courts unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 USC §2254(d); see also *Early v Packer*, 537 US 3, 7–8 (2002, *per curiam*); *Cobb v Thaler*, 682 F3d 364, 372–73 (5th Cir 2012). A state-court decision is *contrary to clearly established federal law* "if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court

or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." *Gray v Epps*, 616 F3d 436, 439 (5th Cir 2010), citing *Williams v Taylor*, 529 US 362, 404–08 (2000). A state-court decision involves *an unreasonable application of federal law* when the decision is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v Woodall*, 572 US 415, 419 (2014), quoting *Lockyer v Andrade*, 538 US 63, 75–76 (2003). This is a high bar. To satisfy it, a petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v Donald*, 575 US 312, 316 (2015, *per curiam*) quoting *Harrington v Richter*, 562 US 86, 103 (2011).

*As to disputed questions of fact*, AEDPA precludes federal *habeas* relief unless the state-court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 USC §2254(d)(2); see *Martinez v Caldwell*, 644 F3d 238, 241–42 (5th Cir 2011). A state court's factual determinations are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 USC §2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to implicit or "unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Murphy v Davis*, 901 F3d 578, 597 (5th Cir 2018), quoting *Valdez v Cockrell*, 274 F3d 941, 948 n 11 (5th Cir 2001).

A federal court reviewing a petition for writ of *habeas corpus* may only consider the factual record that was before the state court when determining the reasonableness of that court's findings and conclusions. *Cullen v Pinholster*, 563 US 170, 180–81 (2011). And the reviewing court "may not characterize the state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Brumfield v*

6

*Cain*, 576 US 305, 313–14 (2015), quoting *Wood v Allen*, 558 US 290, 301 (2010). To the contrary, §2254(d)(2) requires the federal court to "accord the state trial court substantial deference." *Brumfield*, 576 US at 314.

A petitioner seeking a writ of *habeas corpus* must also demonstrate injury of a certain character. To warrant relief based on state-court error, a petitioner must show the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v Abrahamson*, 507 US 619, 623 (1993), quoting *Kotteakos v United States*, 328 US 750, 776 (1946). This, too, is a high bar that requires more than a mere reasonable possibility that the error contributed to the verdict. *Brecht*, 507 US at 637. This high bar isn't met when evidence of the defendant's guilt is overwhelming. *Burgess v Dretke*, 350 F3d 461, 472 (5th Cir 2003). But when a court is confident the error caused grave harm—or even if the record is evenly balanced in this regard—the petitioner is entitled to relief. See *Fry v Pliler*, 551 US 112, 121 n 3 (2007), citing *O'Neal v McAninch*, 513 US 432, 435 (1995); see also *Robertson v Cain*, 324 F3d 297, 305 (5th Cir 2003).

### 3. Ineffective assistance of trial counsel (Claims 1–4, 6 & 11)

Petitioner raises six claims of ineffective assistance of trial counsel. To establish ineffective assistance of trial counsel, a *habeas* petitioner must demonstrate both *deficient performance* and ensuing *prejudice*. See *Strickland v Washington*, 466 US 668, 687 (1984); see also *Alvarez v Guerrero*, 162 F4th 570, 579 (5th Cir 2025).

To establish *deficiency*, the petitioner must show that trial counsel's performance fell below an objective standard of reasonableness based on "prevailing norms of practice." *Loden v McCarty*, 778 F3d 484, 494 (5th Cir 2015). In that regard, courts should be "highly deferential" to counsel. *Strickland*, 466 US at 689. This means that "counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." Id at 690.

This deference is particularly applicable to "strategic choices made after thorough investigation of law and facts relevant to plausible options," which are "virtually unchallengeable." Id at 690–91; see also *United States v Jones*, 287 F3d 325, 331 (5th Cir 2002). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on the investigation" *Strickland*, 466 US at 690–91. But courts are "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all." *Richards v Quarterman*, 566 F3d 553, 564 (5th Cir 2009). Beyond this, the Fifth Circuit has described the deficient-performance standard as requiring counsel to have "blundered through trial, attempted to put on an unsupported defense, abandoned a trial tactic, failed to pursue a reasonable alternative course, or surrendered his client." *Jones*, 287 F3d at 331.

To establish *prejudice*, the petitioner must show a reasonable probability that, absent the deficient performance, the outcome of the proceedings would have been different. *Reed v Stephens*, 739 F3d 753, 773 (5th Cir 2014), quoting *Strickland*, 466 US at 694. In this context, a *reasonable probability* is one that is sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 US at 694.

Lastly, when claims of ineffective assistance of counsel are raised in a federal *habeas corpus* petition, AEDPA's deferential standard raises an additional hurdle. The inquiry on federal *habeas* review isn't whether defense counsel's performance fell below the *Strickland* standard. Instead, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 US at 101. "If this standard is difficult to meet, that is because it was meant to be." Id at 102.

8

### a.   Failing to confer with Petitioner (Claim 1)

Petitioner first contends that trial counsel rendered ineffective assistance by failing to confer with him about his case, thus denying him the opportunity to tell counsel about his alibi witnesses. He points to an affidavit from his wife and counsel's time sheets as supporting his claim that counsel didn't confer with him before the revocation hearing. Dkts 16 at 5–6 & 16-1 at 5, 18–19.

Petitioner's exhibits contradict his allegation that he never conferred with counsel. Counsel's time sheets show phone calls between counsel and Petitioner on February 13th and 27th of 2019. Dkt 16-1 at 19. Both calls occurred before the February 28th revocation hearing. Dkt 38-1 at 1. While the exhibits don't document the substance of the phone calls, they demonstrate that Petitioner had the opportunity to confer with counsel before the revocation hearing and provide him with information on potential alibi witnesses. Counsel can't be ineffective for failing to confer with Petitioner when Petitioner's own exhibits show that he spoke with counsel on at least two occasions before the revocation hearing.

The state *habeas* court didn't unreasonably apply the *Strickland* standard in denying this claim. Claim 1 is without merit and will be dismissed.

### b.   Failing to investigate, interview, and call defense witnesses (Claims 2 & 3)

Petitioner next contends that trial counsel provided ineffective assistance by failing to investigate, interview, and call witnesses to testify on Petitioner's behalf. He attaches several affidavits from family and friends, who state that they saw him at his house in Houston on the evening of the theft in Louisiana. Dkts 16 at 5–10 & 1-1 at 2–5. He also contends that counsel should have called Harris County Supervision Officer Latoya Santee to testify that he reported his Louisiana arrest to her within forty-eight hours. Dkt 16 at 5–10.

"[C]omplaints of uncalled witnesses are not favored in federal *habeas corpus* review because the presentation of

testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v Quarterman,* 566 F3d 527, 538 (5th Cir 2009). To prove that counsel was ineffective for failing to call a witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." Ibid; see also *Evans v Cockrell,* 285 F3d 370, 377 (5th Cir 2002). Absent allegations showing that a particular witness would have offered testimony favorable to the defense, a petitioner's claim is speculative and conclusory, demonstrating neither deficient performance nor resulting prejudice. See *Sayre v Anderson,* 238 F3d 631, 635–36 (5th Cir 2001).

The Fourteenth Court of Appeals addressed Petitioner's claim concerning the alibi witnesses on direct review:

> In his second issue, appellant contends that he was denied effective assistance of counsel by failing to investigate alibi witnesses and call them at the adjudication hearing. Appellant relies on two purported affidavits attached to his motion to abate the appeal, which this court denied.
>
> **A. Legal Principles**
>
> To prevail on a claim of ineffective assistance, an appellant must prove by a preponderance of the evidence that (1) counsel's performance was deficient by falling below an objective standard of reasonableness and (2) counsel's deficiency caused the appellant prejudice such that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See Strickland v Washington*, 466 US 668, 687–88, 694 (1984); *Perez v State,* 310 SW3d

10

890, 892–93 (Tex Crim App 2010). An appellant must prove both prongs of the *Strickland* test by a preponderance of the evidence. *See Perez*, 310 SW3d at 893.

Often a claim of ineffective assistance may not be addressed on direct appeal because the record is not sufficient to conclude that counsel's performance was deficient under the first *Strickland* prong. *See Andrews v State*, 159 SW3d 98, 103 (Tex Crim App 2005); *see also Salinas v State*, 163 SW3d 734, 740 (Tex Crim App 2005). "Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation." *Salinas*, 163 SW3d at 740. "To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quotation omitted). If counsel has not had an opportunity to explain their actions, we may not find deficient performance unless the conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v State*, 187 SW3d 390, 392 (Tex Crim App 2005) (quotation omitted).

### B. Analysis

Appellant has not established deficient performance and prejudice by a preponderance of the evidence.

Regarding the alleged deficient performance, nothing in the record indicates that counsel failed to investigate an alibi defense or lacked a strategic reason

11

for not calling witnesses. *See Lumpkin v State*, 129 SW3d 659, 665 (Tex App—Houston [1st Dist] 2004, pet ref'd) (refusing to find ineffective assistance based on failure to call witnesses when the record was silent as to counsel's strategy; refusing to "speculate about the reasons that appellant's trial counsel did not call these witnesses to testify"). The record does not show that the two purported alibi witnesses would have been available to testify. *See, eg, Stokes v State*, 298 SW3d 428, 431 (Tex App—Houston [14th Dist] 2009, pet ref'd) ("A claim of ineffective assistance based on trial counsel's failure to call a witness cannot succeed absent a showing that the witness was available to testify and that the witness's testimony would have benefitted the defense.").

Moreover, appellant has not established prejudice because the purported alibi witnesses' testimony would have had no effect on the trial court's finding that appellant violated a condition of community supervision by failing to report his arrest to his supervision officer within forty-eight hours. *See Smith v State*, 286 SW3d 333, 342–44 (Tex Crim App 2009) (no prejudice from failure to adduce evidence that related to only one of four violations of the conditions of community supervision that the trial court found the defendant had committed because, even assuming that the defendant could have successfully challenged one of the violations, the trial court was justified in revoking community supervision based on the other violations).

Appellant's second issue is overruled.

12

*Boutte*, 2020 WL 4873200 at *3–4 (cleaned up).

Petitioner doesn't show that the state appellate court's application of the *Strickland* standard to his claims relating to the alibi witnesses was unreasonable. This is particularly true given that none of the affidavits address whether the alleged alibi witnesses were available and willing to testify at the revocation hearing.

Likewise, Petitioner doesn't allege facts showing that Officer Santee was available to testify at the revocation hearing. Without such allegations, he hasn't met the *Day* standard for showing that counsel provided ineffective assistance of counsel.

Claims 2 and 3 are without merit and will be dismissed.

> c.   Failing to present exculpatory
>       documentary evidence (Claim 4)

Petitioner next contends that trial counsel rendered ineffective assistance by failing to investigate "exculpatory existing material favorable evidence." Dkt 16 at 10. He doesn't specifically allege what evidence counsel failed to investigate, but it appears that he's referring to a letter from the East Baton Rouge Parish District Attorney stating that criminal charges hadn't yet been filed on the Louisiana arrest, and a contact report concerning Grimes County Supervision Officer Maria Lopez's initial notice of Petitioner's Louisiana arrest. Dkt 16-1 at 7, 13–15.

Even if Petitioner could show that trial counsel was deficient for not obtaining and using these documents at the revocation hearing, his claim fails because he doesn't demonstrate prejudice.

As to *the letter* about the Louisiana charges, Petitioner doesn't show prejudice because revocation of deferred-adjudication probation may be upheld even when charges aren't brought on the underlying events or when the charge upon which the revocation was based is subsequently dismissed. See *Amaya v Beto*, 424 F2d 363, 364 (5th Cir 1970, *per curiam*). Any decision by the Louisiana District Attorney about whether to pursue criminal charges thus wasn't material to whether Petitioner's deferred-

adjudication probation could be revoked. Petitioner can't show that he was prejudiced by trial counsel's failure to obtain or use the letter.

As to *the contact report*, Petitioner fails to show prejudice because the report, on its face, doesn't establish that he complied with condition one of his probation. Condition one required Petitioner to "report to your Supervision Officer" within forty-eight hours of an arrest or questioning by law enforcement. Dkt 38-3 at 76. The motion to adjudicate states that the Louisiana arrest warrant was executed on February 6, 2017. Id at 93. The contact report states that on February 8, 2017, Officer Lopez "received a phone call from Probation Officer Latoya Santee notifying me that [Petitioner] has a warrant for his arrest in Louisiana." Dkt 16-1 at 14.

This report doesn't state that *Petitioner* reported his arrest to Officer Santee. The source of the information—whether from Petitioner or the Harris County Sheriff's Office—isn't identified. The report therefore isn't exculpatory on its face. Petitioner can't show that he was prejudiced by any deficient performance by trial counsel in failing to obtain or use this report at the revocation hearing.

Considering the legal deficiencies in these documents, the record doesn't show that the state *habeas* court unreasonably applied the *Strickland* standard in denying this claim. Claim 4 is without merit and will be dismissed.

### d.   Failing to investigate the underlying offense (Claim 6)

Petitioner contends in his sixth claim that trial counsel rendered ineffective assistance by failing to investigate the events and circumstances underlying the Louisiana offense. Dkt 16 at 18–19.

As explained above, even if trial counsel's performance could be construed as deficient, Petitioner doesn't show prejudice because deferred-adjudication probation may be revoked even when charges aren't brought on the underlying events or when the charge upon which the

14

revocation was based is subsequently dismissed. See *Amaya*, 424 F2d at 364. The specific facts surrounding the Louisiana offense were therefore not material to whether his deferred-adjudication probation could be revoked.

The record doesn't support a finding of prejudice and so doesn't show that the state *habeas* court unreasonably applied the *Strickland* standard in denying this claim. Claim 6 is without merit and will be dismissed.

> e. Failing to move to suppress Petitioner's statements (Claim 11)

Petitioner contends that trial counsel provided ineffective assistance by failing to move to suppress statements he made to law enforcement officers after his arrest on the Louisiana warrant. Dkt 16 at 28–29. But he doesn't identify the statements he contends counsel should have moved to suppress. Further, no statements from Petitioner were elicited during the revocation hearing.

Without allegations that could support a finding of either deficient performance or prejudice, Petitioner doesn't show that the state *habeas* court unreasonably applied the *Strickland* standard in denying this claim. Claim 11 is without merit and will be dismissed.

> 4. Trial court error (Claims 5, 7–10 & 14)

Petitioner raises six claims based on alleged errors made by the state trial court during the revocation proceedings.

His claims are based on what the Supreme Court has characterized as *trial error*. See *Brecht*, 507 US at 629. *Trial error* "occur[s] during the presentation of the case to the jury." Ibid, quoting *Arizona v Fulminante*, 499 US 279, 307–08 (1991). It can be distinguished from a *structural defect*, which challenges "the constitution of the trial mechanism" and "infect[s] the entire trial process." Ibid, quoting *Fulminante*, 499 US at 309–10.

Claims of trial error raised in a federal *habeas corpus* petition are subject to the harmless-error standard of review, which requires the petitioner to show that "the error 'had substantial and injurious effect or influence in

determining the jury's verdict.'" *Brecht*, 507 US at 637, quoting *Kotteakos*, 328 US at 776; accord *United States v Lane*, 474 US 438, 449 (1986) (*habeas* relief isn't available based on assertion of trial error absent showing of actual prejudice). This requires a showing that the errors were of such magnitude as to render the trial fundamentally unfair. See *Neder v United States*, 527 US 1, 8–9 (1999).

### a.   Insufficient evidence (Claim 5)

Petitioner first contends that his deferred-adjudication probation was revoked based on insufficient evidence because he was never formally charged with a criminal offense in Louisiana. He also alleges that any finding that he didn't timely report his Louisiana arrest to his probation officer is contradicted by the documentary evidence. Dkt 16 at 16–17.

To the extent that Petitioner challenges the *factual sufficiency* of the evidence to support the revocation, his claim isn't cognizable on federal *habeas corpus* review. The sole question on federal *habeas* review is whether an error of constitutional magnitude infected his state trial. See *Estelle v McGuire,* 502 US 62, 67–68 (1991); *Pemberton v Collins,* 991 F2d 1218, 1223 (5th Cir 1993). Because a challenge to the *factual* sufficiency of the evidence doesn't implicate a constitutional issue, federal *habeas corpus* review isn't available and relief isn't warranted.

To the extent that Petitioner challenges the *legal sufficiency* of the evidence, his claim is governed by the standard set out in *Douglas v Buder,* 412 US 430 (1973, *per curiam*). Under that standard, which addresses concerns of due process, a revocation of probation is constitutional as long as it isn't "totally devoid" of evidentiary support. Id at 432. In reviewing the evidence for *legal sufficiency*, a federal court mustn't substitute its view of the evidence for that of the fact finder, but instead must consider the evidence in the light most favorable to the trial court's decision. See *Alexander v McCotter*, 775 F2d 595, 598 (5th Cir 1985).

16

Petitioner raised a challenge to the sufficiency of the evidence in his direct appeal. The Texas Court of Appeals reviewed the evidence and found it sufficient to support the revocation of his deferred adjudication probation:

> Each of the Louisiana offenses that the State alleged appellant had committed to support the violation of the terms of his community supervision required proof that appellant lacked the complainant's consent or permission to engage in the proscribed conduct. *See State v Brown*, 3 So3d 547, 551 (La Ct App 2008) (unauthorized entry into a place of business); *State v Ramsdell*, 949 So2d 508, 511 (La Ct App 2006) (theft); *State v Shaw*, 850 So2d 868, 875 (La Ct App 2003) (simple criminal damage to property). Appellant contends that evidence of this element is lacking.

> In both Texas and Louisiana, lack of consent may be proven by circumstantial evidence. *See, eg, State v Perry*, 408 So2d 1358, 1363 (La 1982); *Long v State*, 525 SW3d 351, 364 (Tex App—Houston [14th Dist] 2017, pet ref'd) (citing *Hathorn v State*, 848 SW2d 101, 107 (Tex Crim App 1992), and *Taylor v State*, 508 SW2d 393, 394–97 (Tex Crim App 1974)). For example, in *Williams v State*, the Court of Criminal Appeals held that there was sufficient evidence of a lack of consent for theft when the defendant removed a dress from a store's clothing rack, put it in his coat, and left the store with it almost completely concealed. *See* 591 SW2d 873, 876 (Tex Crim App 1979) (reasoning, when the owner did not testify, that it was a "completely unreasonable hypothesis" that the owner had provided consent for the taking of the dress).

17

> Here, the trial court could have reasonably inferred by a preponderance of the evidence that appellant lacked the owner's consent to cut through the property's chain link fence at night, remove $120,000 worth of tires and rims from vehicles on the property by leaving the vehicles on wooden blocks, load the tires and rims into a U-Haul truck, and transport them from Baton Rouge to a storage facility in Houston, where most, but not all, of the missing tires and rims were discovered. There is sufficient evidence to support the "lack of consent" element for each offense appellant was alleged to have committed as a violation of the conditions of his community supervision.

*Boutte*, 2020 WL 4873200, at *2 (cleaned up).

To the extent that Petitioner asks this Court to re-weigh the evidence and decide if the trial court's decision was correct, such re-weighing is beyond the scope of review permitted by *Douglas*.

In any event, the record also demonstrates that the revocation of his deferred-adjudication probation isn't totally devoid of evidentiary support. Further, under both Texas and federal law, revocation of probation may be upheld even when the charge upon which the revocation was based is subsequently dismissed. See *Amaya*, 424 F2d at 364. In addition, Officer Lopez's testimony provides evidentiary support for a finding that Petitioner violated his deferred-adjudication probation by failing to report his arrest on the Louisiana warrant within forty-eight hours. Revocation on this basis isn't totally devoid of evidentiary support either.

Federal *habeas corpus* relief isn't warranted on this claim under the governing standard of review. Claim 5 is without merit and will be dismissed.

18

   b.   Sixth Amendment objection (Claim 7)

Petitioner next contends that the trial court erred by overruling trial counsel's objection to Officer Lopez's testimony. Specifically, he contends that trial counsel objected to such testimony about whether Petitioner had timely reported his arrest to Officer Santee as a violation of the Sixth Amendment's Compulsory Process Clause. But no such objection appears in the record. Petitioner asserts that the objection must have been "edited out" of the Reporter's Record. Dkt 16 at 20–21.

Relief isn't warranted on this claim for two reasons.

*First*, Petitioner's allegations are legally insufficient. "A habeas petitioner must make specific allegations; 'conclusory allegations unsupported by specifics,' or 'contentions that in the face of the record are wholly incredible'" don't entitle a petitioner to federal *habeas* relief. *Perillo v Johnson,* 79 F3d 441, 444 (5th Cir 1996), quoting *Blackledge v Allison,* 431 US 63, 74 (1977). Petitioner's contention that some unidentified person edited this single objection out of the Reporter's Record is the type of wholly incredible allegation that won't support federal *habeas corpus* relief.

*Second*, even if Petitioner's editing allegation is accepted, he's not entitled to relief on the merits because the Sixth Amendment doesn't apply to deferred-adjudication revocation proceedings. By its terms, the Sixth Amendment applies only to *criminal prosecutions.* US CONST amend VI. Neither a parole revocation hearing nor a probation revocation hearing is a *criminal prosecution.* See *Morrissey v Brewer*, 408 US 471, 480 (1972) (parole revocation); *Gagnon v Scarpelli*, 411 US 778, 782 (1973) (probation revocation). Both the Fifth Circuit and the Texas Court of Criminal Appeals have found that deferred adjudication is a type of probation. See *Spier v Quarterman*, 278 F Appx 303, 304 n 1 (5th Cir 2008, *per curiam*) (recognizing deferred adjudication as a form of probation); *Davis v State*, 968 SW2d 368, 369 (Tex Crim App 1998) (same). Such revocation proceedings therefore need only meet the minimum requirements of due process

19

by providing (i) written notice of claimed violations; (ii) disclosure of the evidence against the probationer; (iii) an opportunity to be heard in person and to present witnesses and documentary evidence; (iv) the right to confront and cross-examine adverse witnesses; (v) a neutral and detached hearing body; and (vi) a written statement of the evidence relied on the reasons for revocation. *Morrissey*, 408 US at 489.

Petitioner doesn't allege that he was denied any of these rights. And his Sixth Amendment claim falls outside the rights to which he is entitled at a deferred-adjudication revocation hearing. Claim 7 is without merit and will be dismissed.

### c.   Sentencing enhancements (Claims 8 & 9)

Petitioner contends in two overlapping claims that the trial court erred by finding the charged sentencing enhancements to be true at the original sentencing hearing rather than at the revocation hearing. Dkt 16 at 22–25. This claim is barred by the applicable statute of limitations.

AEDPA imposes a one-year statute of limitations for federal *habeas corpus* petitions. The statute provides in part:

> (1) A 1-year period of limitation shall apply to an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the

applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 USC §2244(d)(1).

Most directly at issue here is §2244(d)(1)(A), pertaining to limitations running from judgment finality at the conclusion of direct review. The Fifth Circuit has explained that "a decision becomes final 'by the conclusion of direct review or the expiration of the time for seeking such review.'" *Roberts v Cockrell*, 319 F3d 690, 694 (5th Cir 2003), quoting 28 USC §2244(d)(1)(A). Absent appeal to the state's highest court, a judgment becomes final when the time for seeking such review expires. *Gonzalez v Thaler*, 565 US 134, 137 (2012).

Petitioner's AEDPA limitations period began to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 USC §2244(d)(1)(A). A deferred-adjudication order is a *judgment* for purposes of AEDPA. See *Caldwell v Dretke*, 429 F3d 521, 528 (5th Cir 2005). Hence, "the statute of limitations for a federal habeas application raising claims that address his deferred adjudication begins to run when his deferred-adjudication order becomes final, whether or not he is later convicted and sentenced." *Tharpe v Thaler*, 628 F3d 719, 723 (5th Cir 2010).

Petitioner proceeds as if the revocation of his deferred-adjudication probation restarted his time to seek federal *habeas* review of issues arising from the earlier deferred-

21

adjudication order. But the Fifth Circuit has specifically rejected that argument, holding instead that a deferred-adjudication order and a later revocation order "involve two different judgments for AEDPA purposes." *Tharpe*, 628 F3d at 724 (cleaned up). Because there are two different judgments, "we are dealing with two separate and distinct limitations periods under the AEDPA." *Id.* The limitations period applicable to claims arising from entry of the deferred-adjudication order therefore begins to run upon that order becoming final, regardless of any later judgment of conviction and sentence. *Id.*

Petitioner's claim that the trial court erred by accepting his plea to the enhancements at the original sentencing hearing is an attack on the validity of the original deferred-adjudication order. That order became final for purposes of federal *habeas corpus* review on July 30, 2015, the date on which his time to file an appeal from that order expired. See *Roberts*, 319 F3d at 694; see also TRAP 26.2 (appeal is perfected when the notice of appeal is filed within thirty days after the day sentence is imposed). Under §2244(d), the deadline for Petitioner to file a timely federal *habeas corpus* petition raising issues challenging the deferred-adjudication order was one year later, on July 30, 2016. But he didn't file this federal petition until June 2022—well outside the one-year limitations period. The subsequent revocation of his deferred-adjudication probation didn't revive the limitations period as to claims arising from the original deferred-adjudication order. His claims arising from that order are therefore time-barred unless a later accrual date applies.

After a judgment becomes final in state proceedings, the limitations period under §2244(d)(1)(A) doesn't proceed inexorably forward. AEDPA instead provides, "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 USC §2244(d)(2). And so the clock that ticks

onward pursuant to §2244(d)(1)(A) is paused to the extent and during the period to which §2244(d)(2) applies. But a state *habeas* application filed after the federal limitations period has expired doesn't extend the limitations period. See *Scott v Johnson*, 227 F3d 260, 263 (5th Cir 2000). In short, belatedly filing a state *habeas* application doesn't extend or restart an already-expired federal *habeas* limitations period.

Petitioner's state *habeas* application was filed January 7, 2022—more than five years after the federal *habeas* limitations period for claims arising from the deferred-adjudication order had expired. His state *habeas* application neither revived nor extended the already-expired federal limitations period as to that order. This claim is time-barred unless another statutory exception applies. But Petitioner fails to allege facts showing that any other statutory exception to the limitations period applies. He doesn't allege that any unconstitutional state action prevented him from filing his federal *habeas* petition before the expiration of the limitations period. 28 USC §2244(d)(1)(B). He doesn't allege that his claims are based on a newly recognized constitutional right. 28 USC §2244(d)(1)(C). And he doesn't allege facts showing that the factual basis for his claims couldn't have been timely discovered if he had acted with due diligence. 28 USC §2244(d)(1)(D). His claims are thus time-barred unless an equitable exception to the limitations period applies.

Petitioners seeking to avoid the limitations period may also invoke the doctrine of equitable tolling. This preserves claims in situations "when strict application of the statute of limitations would be inequitable." *United States v Patterson*, 211 F3d 927, 930 (5th Cir 2000, *per curiam*), quoting *Davis v Johnson*, 158 F3d 806, 810 (5th Cir 1998). The Fifth Circuit holds that cases presenting "rare and exceptional circumstances" can equitably toll the one-year AEDPA statute of limitations. *Jackson v Davis*, 933 F3d 408, 410 (5th Cir 2019), quoting *Hardy v Quarterman*, 577 F3d 596, 598 (5th Cir 2009, *per curiam*). Equitable tolling "applies principally where the plaintiff is actively

misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *United States v Wheaten*, 826 F3d 843, 851 (5th Cir 2016) (discussing equitable tolling in context of §2255).

A petitioner has the burden to prove entitlement to equitable tolling. *Phillips v Donnelly*, 216 F3d 508, 511 (5th Cir 2000, *per curiam*). To do this, he must show that he diligently pursued his rights but that some extraordinary circumstance prevented timely filing. *Manning v Epps*, 688 F3d 177, 183 (5th Cir 2012) (citations omitted). The required diligence is that which is reasonable, not that which is maximumly feasible. Ibid, quoting *Holland v Florida*, 560 US 631, 653 (2010).

Petitioner doesn't show that any extraordinary circumstance prevented him from timely filing his federal *habeas corpus* petition. The record in no way suggests that the State of Texas misled him about the time to file such a petition. And his *pro se* status and lack of legal knowledge aren't sufficient to entitle him to equitable tolling. See *Felder v Johnson*, 204 F3d 168, 171 (5th Cir 2000).

Petitioner fails to allege facts showing that any statutory or equitable exception to the AEDPA limitations period applies to his claims relating to the original deferred-adjudication order. They are therefore barred by the statute of limitations. Claims 8 and 9 will be dismissed as untimely filed.

### d.   Lack of personal knowledge (Claim 10)

Petitioner next contends that the trial court violated Texas law by overruling his objections based on lack of personal knowledge to testimony from the Louisiana police officers about his cell-phone location. Dkt 16 at 26–27.

The admissibility of evidence is governed by state law, which isn't within the purview of federal *habeas corpus* review. Federal *habeas* courts "'do not sit as a "super" state supreme court' in such a proceeding to review errors under state law." *Dickerson v Guste,* 932 F2d 1142, 1145 (5th Cir 1991), quoting *Martin v Wainwright,* 428 F2d 356, 357 (5th Cir 1970, *per curiam*). As the Supreme Court has

repeatedly held, "federal habeas corpus relief does not lie for errors of state law." *Estelle,* 502 US at 67–68, quoting *Lewis v Jeffers,* 497 US 764, 780 (1990); see also *Pulley v Harris,* 465 US 37, 41 (1984). Relief from state-court evidentiary rulings therefore isn't available unless the rulings result in a "denial of fundamental fairness" under the Due Process Clause. *Neal v Cain,* 141 F3d 207, 214 (5th Cir 1998), quoting *Porter v Estelle,* 709 F2d 944, 957 (5th Cir 1983).

Petitioner objects to the rulings that permitted the two Louisiana police officers to testify to information gathered during their investigation. He primarily asserts that the testimony shouldn't have been admitted because it wasn't based on the officers' personal knowledge.

Rule 602 of the Texas Rules of Evidence provides that a witness may not testify to a matter unless "evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." Tex R Evid 602. Rule 701 of the Texas Rules of Evidence permits lay witnesses to testify to reasonable inferences from facts as long as they have personal knowledge of those facts. See *Osbourn v State*, 92 SW3d 531, 535 (Tex Crim App 2002) (a witness's testimony can include opinions, beliefs, and inferences as long as they are drawn from the witness's own experiences or observations).

The challenged ruling occurred during cross-examination of the Louisiana detective concerning cell-phone records:

> Q. [Defense counsel]: Okay. So I want to understand this. As the phone goes, there was nothing that connected Mr. Boutte as far as that being his phone. You didn't have a contract or anything else, correct?
>
> A. [Witness]: I'm trying to because -- omit some of the -- no.
>
> Q. I'm asking you if you had a contract that -- between the phone service and Mr. Boutte?

25

A. No.

Q. Okay. And you said that you were able to locate the phone near the Louisiana -- in Baton Rouge; is that right, sir?

A. Correct.

Q. Is that information that you got from another source?

A. It's information we received from our warrant.

Q. Okay. And would that be from another source then?

A. Yes, sir.

Q. That's not your personal knowledge, that's somebody else's personal knowledge?

A. Yes, sir.

MR. CANTRELL: Okay. Judge, I would move to strike his testimony concerning the location of the phone in that it's not based on his own personal knowledge. And they don't have any other predicate. They haven't done any other effort to prove up the basis of that information.

THE COURT: Your cell phone location data was what was received under the warrant, if I understood that correctly?

MR. DODSON: Yes, sir.

THE COURT: I will allow him to testify to what he saw and learned from what he received with the search warrant.

MR. CANTRELL: Just for the record, if I may, Your Honor?

THE COURT: You are overruled, sir.

MR. CANTRELL: For the record, may I continue just for the record in case this is appealed?

THE COURT: Yes, sir. Yes, sir. Absolutely.

MR. CANTRELL: Our concern here, Judge, is that under the Sixth Amendment somebody else is interpreting data and I'm assuming writing a report that would be a report written for the purpose of prosecution. So there would be no exception under the hearsay rule in that this specific report is designed for litigation purposes under a warrant, from a -- I'm assuming a cell phone provider with specific information that they're seeking and asking somebody else to interpret data. So that would be also an objection in that he is not an expert on the interpretation of that data and that they would have been relying on another individual's testimony to come up with that data. And, therefore, it would be a violation of my client's rights under the Sixth Amendment and Texas law. And it is hearsay.

THE COURT: So noted, and overruled.

Dkt 38-1 at 33–36.

Petitioner contends that this objection should have been sustained, which would have prevented the State from connecting his cell phone to the crime scene in Baton Rouge. But Texas courts permit a police officer to testify as to a cell phone's location based on cell phone records. For example, see *Alyea v State*, 2021 WL 5117972, *3 (Tex App–Houston [14th Dist], pet ref'd); *Thompson v State*, 425 SW3d 480, 489 (Tex App–Houston [1st Dist] 2012, pet ref'd); *Robinson v State*, 368 SW3d 588, 601 (Tex App–Austin 2012, pet ref'd). Because such testimony is permissible under Texas state law, Petitioner can't show that the trial court erred in overruling the objection. Further, trial counsel's Sixth Amendment objection was properly denied because, as explained above, the Sixth Amendment doesn't apply in deferred-adjudication revocation proceedings. See *Gagnon*, 411 US at 782; *Spier*, 278 F Appx at 304 n 1.

Petitioner hasn't shown that the trial court's rulings were erroneous or that any errors resulted in a denial of fundamental fairness. Claim 10 is without merit and will be dismissed.

### e.    Vague and indefinite condition of supervision (Claim 14)

Petitioner next contends that the trial court erred by revoking his deferred-adjudication probation when the underlying condition was so vague and indefinite as to constitute a due process violation. Dkt 16 at 34–35.

A statute may violate due process when it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v United States*, 576 US 591, 595 (2015). This principle also applies to conditions governing various types of supervised release. For example, see *United States v Paul*, 274 F3d 155, 166 (5th Cir 2001). But a probation condition's lack of specificity doesn't necessarily render it void. Instead, a probation condition is void for vagueness only if it is so indefinite that no "commonsense understanding of what activities the categories encompass" is possible. Id at 167.

Condition one of Petitioner's deferred-adjudication probation ordered him to comply with the following:

> Commit no offense against the laws of this state or any other state or of the United States or of any governmental entity, and report to your Supervision Officer within forty-eight (48) hours if arrested or questioned by a law enforcement officer. [Art. 42.12 Sec. 11(a)(1)].

Dkt 38-3 at 76. Allegations 1a and 1b of the motion to revoke and adjudicate alleged that Petitioner violated the first and second phrases of this condition. Id at 92–93.

Petitioner contends that the second phrase of this condition is so vague and indistinct as to violate due process because it didn't clearly tell him which Supervision Officer to contact. He alleges that he was originally

assigned to Officer Lopez in Grimes County because that's where he was convicted. But because he lives in Harris County, he was also assigned to Officer Santee. He contends that he timely reported his Louisiana arrest to Officer Santee, which he believed was sufficient to comply with condition one. But at the hearing, the prosecutor presented evidence showing that Petitioner did *not* timely report to Officer Lopez.

Even if an aspect of the conditions could be said to be vague in Petitioner's specific situation, he can't show that the error "had substantial and injurious effect or influence" on the revocation proceedings. *Brecht*, 507 US at 637, quoting *Kotteakos*, 328 US at 776. The trial court found that the State had proved a violation of condition one without making a specific finding as to which phrase of the condition was violated. As explained above, the State presented sufficient evidence to prove a violation of the first phrase of condition one, and revocation of Petitioner's supervision was proper on that basis alone. See *Smith*, 286 SW3d at 342–44 (when defendant is charged with violations of multiple provisions of probation, no prejudice arises from failure to adduce sufficient evidence as to one alleged violation if trial court is justified in revoking probation based on other violations).

Petitioner doesn't show that the alleged vague or indefinite nature of the second phrase of the condition had a substantial or injurious effect on the revocation proceedings when there was sufficient evidence to support revocation on a different basis. He therefore doesn't meet the required standard for federal *habeas corpus* relief. Claim 14 is without merit and will be dismissed.

### 5. Fourth Amendment violation (Claim 15)

Petitioner next contends that his arrest on both the Louisiana warrant and the alleged deferred-adjudication probation violation were without probable cause and so violated his Fourth Amendment rights. Dkt 16 at 36–37. He isn't entitled to relief on this claim for two reasons.

*First,* federal courts don't have authority to review alleged Fourth Amendment violations in *habeas corpus* proceedings unless the petitioner was denied a full and fair opportunity to litigate the issue in the state-court proceedings. See *Stone v Powell*, 428 US 465, 494 (1976); see also *Wallace v Kato*, 549 US 384, 395 n 5 (2007). The Fifth Circuit states:

> An "opportunity for full and fair litigation" means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.

*Caver v Alabama,* 577 F2d 1188, 1192 (5th Cir 1978); see also *United States v Alanis*, 88 F Appx 15, 21 (5th Cir 2004, *per curiam*): "[W]hen a defendant fails to raise his Fourth Amendment claim at trial (as occurred here), then *Stone* precludes habeas relief on Fourth Amendment grounds, even though no state hearing was held on the claim."

Petitioner had the opportunity to raise his Fourth Amendment claims either before or during the revocation hearing. Because he had such an opportunity, the issue of the legality of that arrest can't be raised and reviewed in this federal *habeas* proceeding.

*Second,* even if not barred by *Stone*, Petitioner's claim fails on the merits. The Fourth Amendment guarantees that "no warrants shall issue, but upon probable cause." US CONST amend IV. An arrest executed pursuant to a warrant issued by a detached and neutral magistrate upon a finding of probable cause is presumptively valid. See *United States v Leon*, 468 US 897, 914-15 (1984); *United States v McCarley-Connin*, 148 F4th 808, 814 n 3 (6th Cir 2025); see also *United States v Fulton*, 192 F Supp 3d 728, 730 (SD Tex 2016): "Searches and seizures are reasonable, and therefore lawful, if they are based on probable cause and executed pursuant to a warrant issued by a neutral, detached magistrate."

The record contains a signed order for an arrest warrant based on the motion to revoke and adjudicate, together with a signed arrest warrant. Dkt 38-3 at 95–96. That order specifically finds that probable cause exists to believe that Petitioner violated his deferred-adjudication probation in multiple respects. Ibid. This facially valid order for an arrest warrant bars his claim for a Fourth Amendment violation.

Petitioner doesn't allege any facts showing that either the arrest warrant or the procedures used in issuing it were deficient. Instead, he contends that the later decision by the Louisiana District Attorney to forgo prosecution on the new charge demonstrates that probable cause for the revocation warrant was lacking. *Probable cause* exists when the "'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v Mayne,* 217 F3d 239, 245–46 (5th Cir 2000, *per curiam*), quoting *Michigan v DeFillippo,* 443 US 31, 37 (1979). The test is an objective one, and probable cause will exist "if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Club Retro, LLC v Hilton*, 568 F3d 181, 204 (2009), citing *Devenpeck v Alford,* 543 US 146, 153–54 (2004); see also *United States v Alhemoud,* 2025 WL 1617322, *5 n 1 (SD Tex) (recognizing that extrinsic reasons might preclude prosecution but don't negate probable cause).

Probable cause for an arrest may thus exist even if formal charges aren't filed. The Louisiana prosecutor's decision not to pursue prosecution on the Louisiana charge doesn't retroactively negate the probable cause that existed for issuance of the warrant for Petitioner's arrest.

For both reasons, Petitioner isn't entitled federal *habeas corpus* relief based on a Fourth Amendment violation. Claim 15 is without merit and will be dismissed.

31

### 6.    Prosecutorial misconduct (Claims 12 & 17)

Petitioner contends in two claims that the prosecutor violated *Brady v Maryland*, 373 US 83 (1963), by suppressing favorable documentary evidence before the revocation hearing. Dkt 16 at 30–31, 40–41.

The Supreme Court in *Brady* held that suppression by the prosecution of evidence favorable to an accused after a request violates due process when the evidence is material either to guilt or punishment, irrespective of the good or bad faith of the prosecution. *Brady*, 373 US at 87. To establish a *Brady* violation, a petitioner must prove that the prosecutor suppressed or withheld evidence that was both favorable and material to the defense. *Moore v Illinois*, 408 US 786, 794–95 (1972); *Ogle v Estelle*, 641 F2d 1122, 1124 (5th Cir 1981). Evidence is *material* only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v Bagley*, 473 US 667, 682 (1985). A *reasonable probability* is a probability sufficient to undermine confidence in the outcome of the trial. Ibid.

Petitioner's *Brady* claim is based on (i) a letter from Louisiana authorities stating that Petitioner hadn't yet been charged with a criminal offense, and (ii) a contact report relating to the charge that he failed to contact his probation officer within forty-eight hours of his arrest for the Louisiana offense.

As to *the letter* about the Louisiana charges, Petitioner can't show that it was *material* because a revocation of deferred-adjudication probation may be upheld even when charges either aren't brought at all or are subsequently dismissed. See *Amaya*, 424 F2d at 364. The status of the Louisiana proceedings was therefore not material to whether deferred-adjudication probation could be revoked. There's thus no reasonable probability that the result of the proceeding would have been different had this letter been disclosed.

32

As to *the contact report*, the prosecutor presented testimony from Officer Lopez that Petitioner didn't report his arrest within the required time. The contact report shows only that Officer Santee learned of Petitioner's arrest and notified Officer Lopez about it within the forty-eight-hour window. But the document doesn't show that Petitioner reported his arrest to either officer, as required by condition one of his probation. It instead shows only that Officer Santee became aware of the arrest during that time. Because the source of the information isn't identified, it isn't clear that the contact report is *favorable* evidence that the prosecutor should have disclosed. Petitioner also doesn't show that this evidence is *material* because he can't show a reasonable probability that the outcome of the proceeding would have been different had the document been disclosed. As explained above, the prosecution presented sufficient evidence to prove that Petitioner violated condition one by committing a new criminal offense. Even if Petitioner could show that he timely reported his arrest, there's no reasonable probability that the trial court would have declined to revoke his deferred-adjudication probation.

Absent evidence of materiality, Petitioner isn't entitled federal *habeas corpus* relief based on a *Brady* violation. Claims 12 and 17 are without merit and will be dismissed.

### 7. Improper state *habeas* procedures (Claims 13 & 16)

Petitioner contends in two claims that the Texas Court of Criminal Appeals abused its discretion by (i) finding his motion for rehearing untimely, and (ii) denying his state *habeas corpus* application without a written order. Dkt 16 at 32–33 & 38–39.

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v Rodriguez*, 411 US 475, 484 (1973). But "an attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself." *Rudd v Johnson*, 256 F3d 317, 320

33

(5th Cir 2001). Therefore, "errors in a state habeas proceeding cannot serve as a basis for setting aside a valid original conviction." *Nichols v Scott*, 69 F3d 1255, 1275 (5th Cir 1995).

Petitioner's claims challenging the procedures used by the CCA in ruling on his state *habeas* application don't challenge his conviction and detention. They instead challenge the procedures used in collateral proceedings. As such, they can't serve as a basis for federal *habeas corpus* relief. Claims 13 and 16 are without merit and will be dismissed.

### 8.   Actual innocence (Claim 18)

In a supplemental petition, Petitioner alleges that he is actually innocent of the charge of violating his deferred-adjudication probation. He generally repeats the allegations he makes in his other claims, contending that he didn't commit the Louisiana offense and didn't violate the other provisions of his probation. Dkt 58.

Petitioner's claim appears to arise from a misunderstanding of a claim of actual innocence under *Schlup v Delo*, 513 US 298 (1995). The Supreme Court hasn't yet recognized a freestanding claim of *actual innocence. McQuiggin v Perkins*. 569 US 383, 392 (2013). A viable claim of *actual innocence* instead serves as a gateway to bypass a procedural bar (such as the expiration of the statute of limitations) so that a constitutional claim may be heard. Id at 386, 392. To fall within the gateway, the petitioner must support the allegations with new and reliable evidence that wasn't presented at trial, while establishing that it is "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Fairman v Anderson*, 188 F3d 635, 644 (5th Cir 1999), quoting *Schlup*, 513 US at 327. *New evidence* for purposes of an actual-innocence claim means evidence that wasn't "within the reach of [petitioner's] personal knowledge or reasonable investigation." *Hancock v Davis*, 906 F3d 387, 390 (5th Cir 2018), quoting *Moore v Quarterman*, 534 F3d 454, 465 (5th Cir 2008). Further, "the *Schlup* standard 'does not merely require a

34

showing that a reasonable doubt exists in the light of the new evidence, but rather that *no reasonable juror* would have found the defendant guilty.'" *Bosley v Cain*, 409 F3d 657, 664 (5th Cir 2005, *per curiam*), quoting *Schlup*, 513 US at 329 (emphasis added).

Petitioner doesn't identify any new, reliable evidence that wasn't presented at trial. He points to affidavits from friends and family who he contends can provide an alibi for the night of the Louisiana theft. But those witnesses, as friends and family, were within Petitioner's knowledge at the time of the revocation hearing, and their affidavits could have been obtained with a reasonable investigation. These affidavits aren't *new* evidence as required by *Schlup*.

To the extent that Petitioner relies on the allegedly newly discovered contact report from Officer Santee, it doesn't establish his *actual innocence* because sufficient other evidence supports the conclusion that Petitioner violated his probation by committing the Louisiana offense.

Petitioner's allegations don't satisfy the requirements of *Schlup* and so don't entitle him to *habeas corpus* relief based on actual innocence. Claim 18 is without merit and will be dismissed.

### 9.   Certificate of appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 USC §2253(c)(2). This requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v Dretke*, 542 US 274, 282 (2004), quoting *Slack v McDaniel*, 529 US 473, 484 (2000). When the court denies relief based on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," and that they "would find it debatable whether the

district court was correct in its procedural ruling." *Slack*, 529 US at 484.

The Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct. Petitioner hasn't made the necessary showing for a certificate of appealability.

10. Conclusion

The petition and amended petition for writ of *habeas corpus* brought by Petitioner Adrian Julian Boutte lack merit and are DENIED. Dkts 1 & 16.

This action is DISMISSED WITH PREJUDICE.

Any other pending motions are DENIED AS MOOT.

A certificate of appealability is DENIED.

Final judgment will enter separately.

SO ORDERED.

Signed on ___April 23, 2026___, at Houston, Texas.

Honorable Charles Eskridge
United States District Judge